CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 18 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KELLY H., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:18-CV-00234 |
| | ) |
| v. | ) |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on May 30, 2019, recommending that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Kelly H. ("Kelly") has filed objections to the report and this matter is now ripe for the court's consideration.

### I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's

attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

3

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Plaintiff's Objections[2]

In her objections to the R&R, Kelly asserts that the magistrate judge erred when he made the following findings: (1) that substantial evidence supported the ALJ's determination that Kelly's moderate impairment in concentrating, persisting, and maintaining pace was

---

[2] Detailed facts about Kelly's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 20) and in the administrative transcript (ECF No. 7) and will not be repeated here.

adequately accounted for in the RFC; (2) that the ALJ adequately explained why plaintiff's mild limitations in interacting with others do not result in any limitations in the RFC findings; (3) that the ALJ's opinion regarding Kelly's physical RFC is supported by substantial evidence; and (4) that the ALJ properly assessed her subjective allegations of impairment.

### A. Mental RFC Assessment

In determining that Kelly did not meet a listing for a mental impairment, the ALJ found that she had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in concentrating, persisting, or maintaining pace; a mild limitation in interacting with others; and a mild limitation in adapting or managing oneself. R. 38. Then, when determining her mental RFC, the ALJ concluded that because of her mental impairments, Kelly was limited to simple routine tasks and that she would be off task less than ten percent of the work day. R. 43.

The magistrate judge, in reviewing the ALJ's assessment of Kelly's mental RFC, considered the requirement that the ALJ include a narrative discussion of how the evidence supports his RFC, as set out in SSR 96-8P, 1996 WL 374184 (1996), and relevant case law. ECF No. 20 at 14-16. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (finding that a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling, including a "'discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence'") (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). The magistrate judge discussed the portion of the RFC where the ALJ summarized conflicting evidence regarding Kelly's mental impairment and cited to specific exhibits and pages in the record. The magistrate judge

concluded that because the ALJ considered the medical opinions, evidence of mental impairment, and Kelly's testimony, and because he explained the basis for his ruling, he satisfied the requirements of SSR 96-8P and Monroe.

Kelly objects to the magistrate judge's conclusion and argues that that the ALJ provided no explanation of how he determined that her moderate impairments in concentrating, persisting, and maintaining pace were accommodated in the RFC by a finding that she would be off task less than ten percent of the workday. She also repeats her argument that the mild limitations in interacting with others should have resulted in additional limitations in the RFC.

A de novo review of the ALJ's determination regarding Kelly's RFC shows that it is supported by substantial evidence. The court in Monroe set out the assessment of RFC as follows:

> The process for assessing RFC is set out in Social Security Ruling 96-8p. See [Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)]. Under that ruling, the "'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." Id. (quoting SSR 96-8P, 61 Fed. Reg. at 34,475). Only after such a function-by-function analysis may an ALJ express RFC "'in terms of the exertional levels of work.'" Id. (quoting SSR 96-8P, 61 Fed. Reg. at 34,475). We have explained that expressing RFC before analyzing the claimant's limitations function by function creates the danger that "'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Id. at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,476).

Monroe, 826 F.3d at 187-188. In addition, the ALJ's assessment must include a narrative discussion of how the evidence supports each conclusion, citing medical facts and nonmedical

evidence, and "'must build an accurate and logical bridge from the evidence to his conclusion.'" Id. at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).[3]

The ALJ assessed Kelly's mental impairments on a function-by-function basis and, relevant to her argument, found that she had a moderate limitation in concentrating, persisting, and maintaining pace. R. 38. This limitation was based on the following:

> [Kelly] reported the ability to pay attention for five minutes at a time, and stated that she does not finish what she starts but she was capable of following three-step commands during a mental status examination.

Id. (citing R. 290, 309, 965).

After finding Kelly was limited in this respect, the ALJ then assessed her RFC. He discussed her mental health treatment from 2008 through 2014 and stated that it was clear that her symptoms were well controlled under her regimen of medication. R. 42-43. He found that she was "consistently cooperative and communicative, making good eye contact and smiling with examiners, and her reports of forgetfulness and lack of concentration were not fully supported by findings during examinations." R. 43, 1362, 1365, 1366, 1371, 1376, 1381, 1386, 1400, 360-364, 1085, 1098, 963-965. The ALJ then concluded the following:

> Therefore, upon consideration of the claimant's allegations regarding her mental impairments, as well as the objective medical evidence, generally showing the claimant to be cooperative, communicative, attentive, and responsive to medication, the undersigned finds her mentally limited to simple routine tasks, with the additional requirement that she would have been off task less than ten percent of the workday, as stated above.

---

[3] In Clifford, 227 F.3d at 872, the court observed that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence. Rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion."

R. 43. Kelly argues that the ALJ was required to explain how limiting her to only simple routine tasks and finding that would be off task less than ten percent of the workday reflects her moderate limitation in concentrating, persisting, and maintaining pace, citing Mascio and Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019).

In Mascio, the court held that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, or where other inadequacies in the ALJ's analysis frustrate meaningful review. Mascio, 780 F.3d at 636. Neither concern is present in this case. The ALJ assessed Kelly's mental capacities on a function-by-function basis, found she had moderate difficulties in two areas, considered all the evidence of her mental impairments, and adjusted her RFC accordingly. Thus, he satisfied the requirements of Mascio.

In Thomas, the Fourth Circuit Court of Appeals reiterated that a proper RFC analysis has three components--evidence, a logical explanation, and a conclusion. "The second component, the logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Thomas, 916 F.3d at 311 (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)). In Kelly's case, after setting out the evidence, the ALJ explained that the record made clear that her mental impairments were well-controlled by medication because she received treatment only several times per year and generally reported to providers that she was doing well and that the medications were effective. R. 43. In addition, testing did not show deficits in her short or long-term memory. Id. Thus, the ALJ explained why he discounted Kelly's allegations of more serious mental impairments and limited her to

being off-task less than ten percent during the workday. Accordingly, the court finds that the ALJ satisfied the requirements of both Mascio and Thomas.

Regarding the mild limitation in interacting with others, the magistrate judge found that substantial evidence supported the ALJ's determination that Kelly did not require a social interaction limitation. He recognized that she reported no longer wanting to socialize, but pointed out that medical reports described her as cooperative and communicative. Also, she went shopping in public and talked to her friends daily. ECF No. 20 at 16; R. 38.

Kelly argues that the ALJ made these findings as part of his determination that she did not meet a listing for a mental health impairment and that he was required to provide a more detailed assessment when determining her RFC, citing Panna v. Colvin, No. 1:14-CV-229, 2015 WL 5714403 (W.D. N.C. 2015). In Panna, the court found that where an ALJ failed to describe why moderate difficulties in social functioning did not translate to work-related limitations in the plaintiff's RFC, remand was warranted. Id. at *3-4. In this case, when assessing Kelly's RFC, the ALJ found that her mental impairment symptoms were well-controlled with medication and that she generally reported to her health care providers that she was doing well. She was repeatedly described as being alert, cooperative, communicative, well-groomed, and as making eye contact. R. 43. Thus, the ALJ sufficiently explained why Kelly's mild limitations in interacting with others did not result in work-related limitations.

Kelly also argues that the ALJ failed to pose a proper hypothetical question to the vocational expert because the question did not address the mild and moderate limitations discussed above. However, the hearing transcript shows that the ALJ included the limitations regarding Kelly being limited to only simple routine tasks and being off-task less than ten

9

percent of the workday. R. 78. Thus, the ALJ did include the limitations he recognized. Moreover, Kelly's attorney had an opportunity to include in her hypothetical question to the vocational expert a question regarding any additional limitations she wanted the vocational expert to consider and declined to do so. R. 79. "[A]ny possible defects in an ALJ's hypothetical are cured when the plaintiff's attorney is given an opportunity to pose questions to the VE." Smith v. Astrue, No. 2:11-CV-025-MR-DCK, 2012 WL 3191296 (W.D.N.C. 2012) (citing Shively v. Heckler, 739 F.2d 987, 990-91 (4th Cir. 1984)).

Based on the foregoing, the court finds that the magistrate judge properly assessed the ALJ's decision regarding Kelly's mental RFC under SSR 96-8P and relevant case law, and also finds that the ALJ's conclusion regarding Kelly's mental RFC is supported by substantial evidence. Accordingly, Kelly's objections to the magistrate judge's conclusions are **OVERRULED**.

### B. Physical Residual Functional Capacity

The ALJ assessed Kelly with the RFC to do light work with additional limitations of only frequently balancing; occasionally stooping, kneeling, crouching, crawling; and occasionally climbing ramps, stairs, ladders, ropes, and scaffolds. She could only occasionally reach and had to avoid concentrated exposure to extreme cold, wetness, hazards such as unprotected heights and machinery, fumes, odors, gases and poor ventilation, and vibration. R. 39.

The magistrate judge found that the ALJ properly assessed Kelly's physical RFC because the ALJ decision included a narrative discussion with a detailed summary and analysis of Kelly's impairments, medical records, testimony, and opinion evidence. In addition, the

magistrate judge concluded that there was no objective evidence supporting her allegations that she could not maintain a static work posture and would need to lie down during the day. Her daily activities included taking care of her dog, preparing simple meals, driving, and shopping in stores. Also, the ALJ explained why he gave great weight to the state agency consultants who found that Kelly was capable of light work, and gave little weight to the opinion of one of her treating physicians who stated that Kelly needed to sit down often to relieve pain and is permanently disabled. The magistrate judge concluded that the ALJ's opinion regarding Kelly's physical RFC was supported by substantial evidence. ECF No. 20 at 17-20.

Kelly objects that the magistrate judge did not acknowledge that the ALJ committed reversible error by failing to address whether Kelly would experience pain requiring her to take frequent breaks and be absent from work, how often the breaks would occur, and their impact on her ability to sustain work activity over the course of a day or a week. She asserts that the lack of objective evidence of her need to lie down is not relevant, because once she met her threshold obligation of showing by objective evidence that she has a condition reasonably likely to cause the pain alleged, she is entitled to rely exclusively on subjective evidence to prove that the pain is so continuous or severe that it prevents her from completing an eight-hour workday, citing in support Lewis v. Berryhill, 858 F.3d 858 (4th Cir. 2017) and Hines v. Barnhart, 435 F.3d 559, 565 (4th Cir. 2006).

Kelly is correct that an ALJ may not discount subjective evidence of pain solely on the lack of objective evidence of pain intensity. Lewis, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2)); Hines, 453 F.3d at 565. However, the ALJ did not do that

11

in this case. He acknowledged that Kelly's medically determined impairments could reasonably be expected to produce pain, and then looked at the consistency of her statements in relation to the other evidence in the record. He noted that on examination she was only in mild discomfort, exhibited a normal gait, had a negative straight leg test, and normal motor strength and sensation. She told her health care providers that epidural steroid injections provided some relief and she continued to exhibit full motor strength and a steady, non-antalgic gait. Physical therapy resulted in decreased symptoms and increased activity tolerance. She reported pain relief when taking Tramadol. R. 41-42. In addition, she participated in a broad range of daily activities, including feeding her dog, dressing and bathing herself, albeit with some difficulty, preparing simple meals, doing laundry and dishes, vacuuming, dusting, driving, shopping in stores, managing her personal finances, and doing crafts. R. 40.

The ALJ found that taken as a whole, the evidence was inconsistent with Kelly's alleged limitations. R. 42. Subjective allegations of pain "'need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be expected to cause the pain the claimant alleges she suffers.'" Hines, 453 F.3d at 565 n. 3 (quoting Craig v. Chater, 76 F.3d 585, 598 (4th Cir. 1996)); see also Beavers v. Colvin, No. 5:13-CV-494-D, 2014 WL 4443291, *9 (E.D. N.C. 2014) (citing Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994)) (finding that ALJ may consider inconsistencies between a claimant's testimony and the evidence of record). Thus, the ALJ did not rely solely on a lack of objective medical evidence to discount Kelly's description of the intensity of her pain. Rather, he found her description inconsistent with the evidence in the record. Therefore, his analysis is consistent with Lewis and Hines.

Kelly also complains that the magistrate judge erred in finding that the ALJ correctly gave little weight to the opinion of Dr. Cieraszynski, one of her treating physicians. In a letter dated July 14, 2016, Dr. Cieraszynski stated that Kelly had been under her care since 2014. She opined that Kelly's lumbar stenosis caused intermittent pain throughout the day, causing her to need to sit down often to relieve her pain and that she should be considered disabled. R. 1174. The ALJ gave that opinion little weight, first noting that whether an individual is disabled is not a medical issue but is an administrative issue that is reserved to the Commissioner. In addition, Dr. Cieraszynski's opinion was dated two years after the expiration of Kelly's insured status and was inconsistent with the evidence of normal gait and full strength and sensation throughout the relevant period. R. 42.

The magistrate judge found that the ALJ properly gave the letter little weight for the same reasons given by the ALJ. Although Kelly disagrees with that determination, she is asking the court to reweigh the evidence, which it is not at liberty to do. Hunter, 993 F.2d at 43 (4th Cir. 1992); Hays, 907 F.2d at 1456.

In sum, the court finds that the magistrate judge correctly analyzed the ALJ's opinion with regard to Kelly's physical RFC. The ALJ considered Kelly's allegations of pain and her need to lie down frequently and provided a detailed explanation of why her allegations were inconsistent with other evidence in the record. Therefore, the court finds that the ALJ's conclusion that Kelly can do light work with additional restrictions is supported by substantial evidence and Kelly's objections to the findings of the magistrate judge on this issue are **OVERRULED**.

### C. Assessment of Subjective Complaints

13

Kelly objects that the magistrate judge erred in concluding that substantial evidence supported the ALJ's assessment of her subjective complaints. She claims that the ALJ did not explain how her daily activities undermined her allegation that she had difficulty doing chores, needed to change positions frequently, and had to lie down multiple times during the day. She also claims that the ALJ did not explain why the fact that Kelly was described at exams as being alert, well kempt, cooperative, communicative and with no feelings of helplessness or hopelessness undermined her claims that she was sad, depressed, and unable to sleep. Finally, she claims that the ALJ should not have relied on the fact that Kelly declined antidepressants to find that her allegations of depression were not as serious as she claimed. Kelly claims that without these explanations, the ALJ did not build the "logical bridge" called for in Clifford, 227 F.3d at 872.

As set forth above, the ALJ explained that he discounted Kelly's account of the severity of her impairments because they were inconsistent with other evidence in the record and that explanation is a legitimate reason to discount her subjective complaints. See Hines, 453 F.3d at 565 n. 3 and Clifford, 227 F.3d at 872. Also, the ALJ's findings that Kelly often told her caregivers that she was doing well and that she appeared smiling, communicative, and cooperative at appointments supports the conclusion that she was not as debilitated by depression or bipolar disorder as she alleges.

The magistrate judge correctly found that the ALJ provided a clear explanation for why he found Kelly able to do light work with additional limitations even after considering her subjective complaints. Accordingly, Kelly's objection that he failed to do so is **OVERRULED**.

## CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: 07-17-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge